UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NATHAN L. CHANDLER,

        Plaintiff,

  v.

JO ANNE B. BARNHART, Commissioner of Social Security,

        Defendant.

CASE NO. C05-5302KLS

ORDER REVERSING THE COMMISSIONER'S DECISION TO DENY BENEFITS

Plaintiff, Nathan L. Chandler, has brought this matter for judicial review of the denial of his applications for disability insurance and supplemental security income ("SSI") benefits. The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Magistrates Rule 13. After reviewing the parties' briefs and the remaining record, the undersigned hereby finds and ORDERS as follows:

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is thirty-one years old.[1] Tr. 36.  He has a tenth grade education and has past work experience as a laborer and part-time fast food worker. Tr. 13, 75, 80, 93.

Plaintiff protectively filed applications for disability insurance and SSI benefits on March 18, 2002, alleging disability as of December 15, 2000,[2] due to a crushed left foot, a back injury, calcium in his ears, arthritis, and memory problems. Tr. 14, 36, 60, 74, 230, 233.  His applications were denied initially and on reconsideration. Tr. 36-38, 44, 233, 235-36.  Plaintiff requested a hearing, which was held on March 15, 2004, before an administrative law judge ("ALJ"). Tr. 239.  At the hearing, plaintiff, represented by counsel, appeared and testified, as did a lay witness. Tr. 239-69.

On June 14, 2004, the ALJ issued a decision determining plaintiff to be not disabled, finding specifically in relevant part as follows:

(1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of degenerative disc disease, back pain, left foot pain status post fractured third metatarsal, bilateral knee pain, headaches, neck pain, sensorineural hearing loss, a probable personality disorder, and depression;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform essentially the full range of light work, but was further limited to simple, repetitive tasks and occasional contact with others, which precluded him from performing his past relevant work; and

(5) at step five, plaintiff was not disabled based on the application of 20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.17.

Tr. 20-22.  Plaintiff's request for review was denied by the Appeals Council on March 7, 2005, making the ALJ's decision the Commissioner's final decision. Tr. 4; 20 C.F.R. §§ 404.981, 416.1481.

On May 3, 2005, plaintiff filed a complaint in this court seeking review of the ALJ's decision. (Dkt. #1).  Plaintiff argues that decision should be reversed and remanded for an award of benefits because the

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

[2] Plaintiff's actual alleged date is unclear, as the record indicates he is alleging disability both as of December 15, 2002 (Tr. 60, 230) and October 23, 2001 (Tr. 74).

REPORT AND RECOMMENDATION
Page - 2

ALJ erred by relying on 20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.17 to find him not disabled at step five of the disability evaluation process. The undersigned agrees the ALJ erred in finding plaintiff not disabled at this step of the disability evaluation process, but, for the reasons set forth below, finds remand for further proceedings to be appropriate in this case.

## DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I. The ALJ Erred in Finding Plaintiff Not Disabled at Step Five of the Disability Evaluation Process

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the

REPORT AND RECOMMENDATION
Page - 3

medical or other evidence." Id. at *7.

In the "Evaluation of the Evidence" section of his decision, the ALJ set forth the following residual functional capacity for plaintiff:

> [T]he record generally supports the residual functional capacity outlined by the consulting examiner, which involved the ability to lift and carry 50 pounds occasionally and 25 pounds frequently. He can stand, walk, and sit for 6 hours in an 8-hour workday. I also find that he is limited to work that requires simple, repetitive tasks and occasional contact with others. Giving the claimant some benefit of the doubt, I find that he has a slightly more restricted capacity for walking than was opined by the consultative examiner . . . At this, he is limited to only a light residual functional capacity.

Tr. 19. In the "Findings" section of his decision, the ALJ described plaintiff's residual functional capacity in relevant part as follows:

> 6. The claimant has the following residual functional capacity: he has the ability [sic] lift and carry 20 pounds occasionally and 10 pounds frequently. He can stand, walk, and sit for 6 hours in an 8-hour workday. He also is limited to work that requires simple, repetitive tasks and occasional contact with others. . . .
>
> 11. The claimant has the residual functional capacity to perform substantially all of the full range of light work (20 CFR §§ 404.1567 and 416.967). . . .
>
> 13. The claimant's capacity for light work is substantially intact and has not been compromised by any nonexertional limitations.

Tr. 21. Plaintiff argues that because the residual functional capacity with which he was assessed included significant non-exertional limitations, that is, limitations to simple, repetitive tasks and occasional contact with others, the ALJ erred in relying on the Grids to find him disabled. The undersigned agrees.

If the claimant cannot perform his or her past relevant work at step four of the disability evaluation process, at step five, the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(d)-(e). There are two ways that the ALJ can to this: "(a) by the testimony of a vocational expert, *or* (b) by reference to the [Commissioner's] Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." Tackett, 180 F.3d at 1100-1101 (emphasis in original); see also Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). The ALJ's ability to rely on the Grids is limited, however, as noted by the Ninth Circuit in describing their purpose and function:

> In some cases, it is appropriate for the ALJ to rely on the Medical-Vocational Guidelines to determine whether a claimant can perform some work that exists in "significant numbers" in the national economy. The Medical-Vocational Guidelines are a matrix system for handling claims that involve substantially uniform levels of impairment. . . .

> The Guidelines present, in *table form*, a short-hand method for determining the availability and numbers of suitable jobs for a claimant. These tables are commonly known as "the grids." The grids categorize jobs by their physical-exertional requirements and consist of three separate tables-one for each category: "[m]aximum sustained work capacity limited to sedentary work," "[m]aximum sustained work capacity limited to light work," and "[m]aximum sustained work capacity limited to medium work."[3] . . . Each grid presents various combinations of factors relevant to a claimant's ability to find work. The factors in the grids are the claimant's age, education, and work experience. For each combination of these factors, . . . the grids direct a finding of either "disabled" or "not disabled" based on the number of jobs in the national economy in that category of physical-exertional requirements.
>
> This approach allows the Commissioner to streamline the administrative process and encourages uniform treatment of claims. . . .
>
> The Commissioner's need for efficiency justifies use of the grids at step five where they *completely and accurately* represent a claimant's limitations. . . . In other words, a claimant must be able to perform the full range of jobs in a given category, i.e., sedentary work, light work, or medium work.

Tackett, 180 F.3d at 1101 (emphasis in original) (internal citations and footnote omitted).

If, on the other hand, a claimant has "significant non-exertional impairments," those impairments "may make reliance on the grids inappropriate."[4] Id. at 1101-02; see also Osenbrock, 240 F.3d at 1162 (ALJ cannot rely on Grids where claimant has significant non-exertional impairments); Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (Grids inapplicable when they do not completely describe claimant's abilities and limitations). Proper use of the Grids depends in each case upon the nature and extent of the claimant's impairments and limitations:

> The ALJ must apply the grids if a claimant suffers only from an exertional impairment . . . In such cases, the rule is simple: the grids provide the answer. Where the grids dictate a finding of disability, the claimant is eligible for benefits; where the grids indicate that the claimant is not disabled, benefits may not be awarded. However, where a claimant suffers solely from a nonexertional impairment . . . the grids do not resolve the disability question . . . other testimony is required. In cases where the claimant suffers from both exertional and nonexertional impairments, the situation is more complicated. First, the grids must be consulted to determine whether a finding of disability can be based on the exertional impairments alone. . . . If so, then benefits must be awarded. However, if the exertional impairments alone are insufficient to direct a conclusion of disability, then further evidence and analysis are required. In such cases, the ALJ must use the grids as a "framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." . . . In short, the grids serve

---

[3] However, "[I]f a claimant is found able to work the full range of heavy work this is 'generally sufficient for a finding of not disabled.'" Tackett, 180 F.3d at 1101 n.5 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 204.00).

[4] "Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b). "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

REPORT AND RECOMMENDATION
Page - 5

> as a ceiling and the ALJ must examine independently the additional adverse consequences resulting from the nonexertionary impairment.

Cooper v. Sullivan, 880 F.2d 1152, 1155-56 (9th Cir. 1989) (internal citations and footnotes omitted).

> Mental activities are considered to be non-exertional:
>
> Jobs at various levels of complexity require mental functions such as intellectual competence and ability to function in terms of behavior, affect, thought, memory, orientation and contact with reality. Exposure to particular work stresses may not be medically sustainable for some persons with mental impairments, as would be the case with some persons who have physical impairments . . . Depending on the nature and extent of a person's mental impairment . . . relatively broad or narrow types of work may be precluded (e.g., dealing with a variety of abstract and concrete variables with nonverbal symbolism -- a highly skilled level of work -- or dealing frequently with members of the public -- a particular type of work at any level of complexity).

SSR 83-14, 1983 WL 31254 *2. Here, the ALJ found plaintiff had limitations consisting of being able to perform only simple, repetitive tasks and to have only occasional contact with others. The undersigned finds these limitations to be "significant", and therefore the ALJ was precluded from relying on the Grids to find plaintiff disabled.

Defendant argues the ALJ properly applied the Grids, because he "clearly stated" that plaintiff was able to perform "substantially all of the full range of light work," and that plaintiff's capacity for light work was "substantially intact" and had "not been compromised by any nonexertional limitations." Defendant's Brief, p. 7; Tr. 21. The undersigned finds it difficult to understand, however, how the ALJ could find that plaintiff's ability to perform light work had not been compromised by any non-exertional limitations, and yet, elsewhere in his decision (and even on the same page), determine that he was limited to only simple, repetitive tasks and occasional contact with others. It is hardly debatable that such limitations would have a significant impact on an individual's ability to perform work.

At least with respect to the occasional contact with others limitation though, defendant argues SSR 83-14 states that "frequent limitation to the public may only preclude reliance on the grids, depending on the nature and extent of the limitation." Defendant's Brief, p. 8. Defendant, however, misreads this section of SSR 83-14. Properly read, that section refers to a restriction on the ability to deal frequently with the public. SSR 83-14, 1983 WL 31254 *2. That is, a claimant may suffer from a significant mental functional limitation, if he or she is unable to deal frequently with the public. Another way of stating the same thing would be to say, for example, that the claimant is limited to being able to deal with the public on only an occasional basis. This is the situation we have here.

REPORT AND RECOMMENDATION
Page - 6

Even if defendant was correct in her reading of SSR 83-14, the ALJ still found plaintiff was limited to simple, repetitive tasks. The undersigned fails to see how such a limitation does not significantly restrict the range of work plaintiff is able to do. In addition, while the ALJ may have stated that he was using Rule 202.17 as a "framework" for finding plaintiff not disabled, rather than using it to "direct" such a finding, it is not at all clear that he in fact did so. As explained by the Ninth Circuit in Cooper, in cases such as this, the Grids "serve as a ceiling and the ALJ must examine independently the additional adverse consequences resulting from the nonexertionary impairment. Cooper, 880 F.2d at 1155-56 (emphasis added). However, in this case it does not appear that the ALJ conducted any such further examination, but rather applied Rule 202.17 in a manner permissible only where no significant non-exertional impairments are present. That is, it appears the ALJ used Rule 202.17 to "direct" a finding of non-disability.

II.     This Matter Should Be Remanded for Further Administrative Proceedings

The court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because, as discussed above, issues remain with respect to whether plaintiff is disabled at step five of the sequential evaluation process, it is appropriate to remand this matter to the Commissioner for further administrative proceedings.

## CONCLUSION

Based on the foregoing discussion, the court finds the ALJ improperly determined plaintiff was not

REPORT AND RECOMMENDATION
Page - 7

disabled. Accordingly, the ALJ's decision is REVERSED and REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 5th day of January, 2006.

                                        Karen L. Strombom
                                        United States Magistrate Judge